UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CESAR SANTOS VERDUZCO, CDCR #BW-0724,<br><br>                      Plaintiff,<br><br>vs.<br><br>CDCR, RJD, CORRECTIONAL OFFICERS TRILLO, REED, MASSCARO AND MAZA,<br><br>                      Defendants. | Case No.:  24cv1972-RSH (BJC)<br><br>**ORDER:**<br><br>**(1)  GRANTING MOTION TO PROCEED IN FORMA PAUPERIS; AND**<br><br>**(2) DISMISSING COMPLAINT PURSUANT TO 28 U.S.C. §§ 1915(e)(2) & 1915A(b)** |

      Plaintiff Cesar Santos Verduzco, a state inmate incarcerated at the Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, proceeding pro se, has filed a civil rights Complaint pursuant to 42 U.S.C. § 1983, along with a motion to proceed in forma pauperis ("IFP"). ECF Nos. 1-2.

**I.     Motion to Proceed IFP**

      All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $405, consisting of a $350 statutory fee plus an additional administrative fee of $55, although the administrative fee does not apply to persons granted leave to proceed IFP.

*See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023)). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007). A prisoner seeking leave to proceed IFP must submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has insufficient assets. *See* 28 U.S.C. § 1915(b)(1)&(4); *Bruce v. Samuels*, 577 U.S. 82, 84 (2016). Prisoners who proceed IFP must pay any remaining balance in "increments" or "installments," regardless of whether their action is ultimately dismissed. 28 U.S.C. § 1915(b)(1) & (2); *Bruce*, 577 U.S. at 84.

In support of his IFP motion, Plaintiff submitted a copy of his California Department of Corrections and Rehabilitation ("CDCR") Inmate Statement Report and Prison Certificate attested to by a CDCR trust account official. ECF No. 3 at 1. The document shows he had an average monthly balance of $59.74 and average monthly deposits of $59.48, with an available balance of $0.08. *Id*.

The Court **GRANTS** Plaintiff's motion to proceed IFP and declines to assess the $11.94 initial partial filing fee because it appears Plaintiff has insufficient funds to pay it. *See Taylor v. Delatoore*, 281 F.3d 844, 850 (9th Cir. 2002) (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered"). The Secretary of the CDCR or his designee will collect and forward to the Clerk of Court the full $350 filing fee required by 28 U.S.C. § 1914 pursuant to the installment payment provisions of 28 U.S.C. § 1915(b)(1).

//

## II. Screening Pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b)

### A. Standard of Review

Because Plaintiff is a prisoner proceeding IFP, his Complaint requires a pre-Answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). The Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, that is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (citing 28 U.S.C. § 1915A(b)(1)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that § 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).") Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quote marks omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

B.   **Allegations in the Complaint**

Plaintiff claims in count one that he was subjected to cruel and unusual punishment. ECF No. 1 at 3. He alleges that on May 3, 2024, he was speaking with another inmate when RJD correctional officer Trillo called Plaintiff to come to the officer's table. *Id*. Plaintiff approached the officer's table where RJD correctional officers Masscaro and Reed were stationed with Trillo. *Id*. Trillo was standing next to an inmate named Hernandez, and Trillo told Plaintiff that Hernandez "does not want to live with you anymore. He wants to fight with you." *Id*. Plaintiff asked Hernandez "what is happening" and Hernandez replied by punching Plaintiff, who fell to the floor unconscious. *Id*. When Plaintiff regained consciousness he was bleeding from his nose and "officers soon arrived to stop the assault with a medical team to treat [Plaintiff]." *Id*. He claims Trillo, Masscaro and Reed conspired with each other to have him assaulted, and that "if the officers would not have incited [and] conspired [Plaintiff] would not have been assaulted by inmate Hernandez." *Id*. at 2-3.

Plaintiff claims in count two he was denied proper medical care. *Id*. at 5. He alleges the medical team treated his broken nose with a t-shirt and medical gauze, and that he walked about 100 yards to the treatment area "while trying to stop the bleeding himself and struggling to walk slightly in and out of consciousness." *Id*. The medical team requested an ambulance to avoid the walk, but correctional officer Maza "denied the request and said 'make him walk.'" *Id*. He was later taken to a hospital where a CT scan showed a broken nose, left and right cheek bone fractures, and internal bleeding of the brain for which surgery was needed after the swelling went down. *Id*. Several weeks later he "had rhino surgery of the nose and was left with concussion syndrome and continues to have the effects of the brain that may last permanently." *Id*.

Plaintiff claims in count three that he was denied due process. *Id*. at 6. He alleges that he was not allowed to be involved in the disciplinary hearing charging Hernandez with assault and was not provided incident reports or other paperwork or video evidence of the incident. *Id*. He also alleges he was not permitted to bring criminal charges against defendants Trillo, Masscaro, Reed and Maza or have them investigated for their role in his

assault and denial of medical care. *Id*. at 6. Although Plaintiff lists as defendant in the caption of the Complaint RJD and the California Department of Corrections and Rehabilitation, there are no allegations against either entity.

### C.   Discussion

#### 1) Eighth Amendment Claims

Plaintiff claims he was subjected to cruel and unusual punishment because he would not have been assaulted by his fellow inmate Hernandez but for Trillo calling him over to the officer's table where Masscaro and Reed were stationed with Trillo; and that he was denied proper medical care for his injuries by being forced to walk 100 yards to the treatment area by Maza rather than being provided an ambulance. ECF No. 1 at 3-5. Under the Cruel and Unusual Punishments Clause of the Eighth Amendment "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners" and to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). A prison official may be held liable for an assault suffered by one inmate at the hands of another only where the assaulted inmate can show that the injury is sufficiently serious, and that the prison official was deliberately indifferent to the risk of harm. *Id*. at 834, 837.

The principles underlying the Eighth Amendment's prohibition on the infliction of cruel and unusual punishment also "establish the government's obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 101-03 (1976). Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment." *Colwell v. Bannister,* 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)). However, "an inadvertent failure to provide medical care" does not state a federal claim. *Estelle*, 429 U.S. at 105-06.

"[A] prison official violates the Eighth Amendment when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer,* 511 U.S. at 834. Second, a plaintiff must allege the prison official he seeks to hold liable had a

"'sufficiently culpable state of mind' . . . [T]hat state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* A prison official can be held liable only if he "knows of and disregards an excessive risk to inmate health and safety"; he "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Further, "threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." *Guy v. Espinoza*, No. 119CV00498AWIEPGPC, 2020 WL 309525 (E.D. Cal. Jan. 21, 2020), *adopted by* 2020 WL 949556 (E.D. Cal. Feb. 27, 2020) (citing *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996)).

While Plaintiff has plausibly alleged Trillo was aware Hernandez posed a danger of assaulting Plaintiff, there are no factual allegations that Trillo actually drew an inference that Hernandez posed a substantial risk of serious harm to Plaintiff at that moment nor that he disregarded that risk. *See Prater*, 89 F.3d at 541 (threats alone are insufficient to impute actual knowledge of substantial risk of harm). Rather, the Complaint simply alleges Trillo called Plaintiff over to a table where three officers stood and informed him that Hernandez no longer wished to share a cell with Plaintiff and wanted to fight. ECF No. 1 at 3.

Plaintiff provides no factual allegations whatsoever about defendants Masscaro and Reed, other than that they were at the officer's table when the assault took place, that they "conspired with" each other and with Trillo to have Plaintiff assaulted, that "if the officers would not have incited [and] conspired [Plaintiff] would not have been assaulted by inmate Hernandez." ECF No. 1 at 2-3. Such conclusory allegations are insufficient to state a claim. *See Iqbal,* 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim.) Rather, a prisoner must allege "(1) that the specific prison official, in acting or failing to act, was deliberately indifferent to the mandates of the eighth amendment and (2) that this indifference was the actual and proximate cause of the deprivation of the inmates' eighth amendment right to be free from cruel and unusual punishment." *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988); *see also Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ("In

order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation.").

With respect to the denial of a medical care claim, the Complaint plausibly alleges a serious medical need. *See Doty v. County of Lassen*, 37 F.3d 540, 546 n.3 (9th Cir. 1994) ("[I]ndicia of a 'serious' medical need include (1) the existence of an injury that a reasonable doctor would find important and worthy of comment or treatment, (2) the presence of a medical condition that significantly affects an individual's daily activities, and (3) the existence of chronic or substantial pain."). However, the Complaint as drafted fails to plausibly allege any Defendant was deliberately indifferent to that serious medical need based on the allegation that Maza forced Plaintiff to walk 100 yards to the treatment area rather than take an ambulance.

The deliberate indifference prong of an Eighth Amendment violation "is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). A prison official can be held liable only if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. A prison official, acting with deliberate indifference, must expose a prisoner to a sufficiently "substantial risk of serious harm" to his health. *Id.* at 843. Plaintiff has not plausibly alleged how having to walk 100 yards to the treatment area rather than take an ambulance exposed him to a substantial risk of serious harm or caused him harm. *Id.*; *Jett*, 439 F.3d at 1096 (stating that an Eighth Amendment violation requires "harm caused by the indifference").

Plaintiff's Eighth Amendment failure to protect and denial of medical care claims are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) for failure to state a claim.

### 2) Fourteenth Amendment Due Process Claim

Plaintiff claims he was denied due process when he was not allowed to be involved in the disciplinary proceedings charging Hernandez with assault and was not provided

incident reports or other paperwork or video evidence of the incident, and when he was not permitted to bring criminal charges against defendants Trillo, Masscaro, Reed and Maza or have them investigated for their role in his assault and denial of medical care. ECF No. 1 at 6. The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Liberty interests protected by the Due Process Clause for incarcerated persons "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Plaintiff has not plausibly alleged he has a liberty interest protected by the Fourteenth Amendment's Due Process Clause in being involved in the prison disciplinary proceedings of the inmate who assaulted him or in the state criminal prosecution or investigation of the Defendants. *See id.* (holding that state law creates a liberty interest deserving of protection under the 14th Amendment when the deprivation (1) restrains the inmate's freedom in a manner not expected from his or her sentence and (2) "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"); *see also Robinson v. Cry*, 256 F. App'x 952, 952 (9th Cir. 2007) (holding that no protected liberty interest exists in involvement in other inmate's prison procedures) (citing *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) ("[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure.")); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution" because "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.").

Plaintiff's Fourteenth Amendment due process claim is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) for failure to state a claim.

### D. Leave to Amend

In light of his pro se status, the Court grants Plaintiff leave to amend his Complaint in order to attempt to address the pleading deficiencies identified in this Order. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.").

### III. Conclusion

Accordingly, good cause appearing, the Court:

1) **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2).

2) **DIRECTS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's prison trust account the $350.00 filing fee owed in this case by collecting monthly payments from the account in an amount equal to twenty percent (20%) of the preceding month's income and forward payments to the Clerk of the Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2).

3) **DIRECTS** the Clerk of the Court to serve a copy of this Order by U.S. Mail on Jeff Macomber, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California, 94283-0001.

4) **DISMISSES** Plaintiff's Complaint for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1) and **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to file an Amended Complaint which cures all the deficiencies noted. Plaintiff's Amended Complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in his Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc.*, 896 F.2d at 1546 ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled").

//

If Plaintiff fails to file an Amended Complaint within the time provided, the Court will enter a final order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1), and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED**.

Dated: December 20, 2024

*Robert S. Huie*

Hon. Robert S. Huie
United States District Judge